UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF FOUR SAMSUNG SMARTPHONES, ONE OPPO SMARTPHONE, ONE APPLE SMARTPHONE, ONE KENWOOD DASH CAMERA, AND ONE PAPER NOTEBOOK CURRENTLY LOCATED AT UNITED STATES CUSTOMS BORDER PROTECTION, PITTSBURG, NH PORT OF ENTRY | Case No. 23-mj- 179-01-AJ |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION FOR SEARCH WARRANT**

I, Salvatore D. Levatino, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of seven electronic devices and one paper notebook—described below and in Attachment A—that are currently in law enforcement's possession, and the seizure from those items of the information described in Attachment B.

2.  I am a Border Patrol Agent (Intelligence) with the United States Department of Homeland Security, Office of Border Patrol. I have been employed as a U.S. Border Patrol Agent since May 2018. I am currently assigned as an Intelligence agent, and I work at the Beecher Falls Border Patrol Station in Canaan, Vermont. I received formal training to identify and investigate alien smuggling and narcotics smuggling activities both at the United States Border Patrol Academy in Artesia, New Mexico from May 2018 to October 2018 and through regular and recurring on-the-job training. In my experience investigating many alien smuggling cases, electronic devices were commonly used to facilitate the smuggling event by arranging the

coordination of transportation and by guiding both the smugglers transporting the aliens and the receiving load driver via global positioning system applications and communications relayed over Wi-Fi and/or a telecommunications network.

3. Based on my training and experience, I am aware that individuals working together to commit crimes often use their cellular phones to contact one another, to research related topics, to navigate while driving, and to coordinate meeting locations. These tasks are frequently necessary in the Swanton Border Patrol Sector Area of Responsibility (AOR); given the remote and rural nature of the AOR, arranging meetings at precise times and navigating to locations unlikely to appear on printed maps often requires the use of cellular devices. Further, I am aware that cellular phones and the cellular network often generate and record data without the phone users necessarily being aware of or able to delete the data.

4. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## IDENTIFICATION OF THE ITEMS TO BE EXAMINED

5. The property to be searched is a Samsung smartphone in evidence bag # A5659627 belonging to Reynaldo VELASCO-VELASCO and found on his person, a Kenwood dash camera in evidence bag # A5659591 found in VELASCO-VELASCO's vehicle, a paper notebook in evidence bag # A5659592 found in VELASCO-VELASCO's vehicle, an unclaimed Samsung smartphone in evidence bag # A5659523, an Oppo smartphone in evidence bag # A5659529 belonging to Daniel SANCHEZ-GALLEGOS, a Samsung smartphone in evidence bag # A5659528 belonging to Jose Alberto POSADAS-GARCIA, a Samsung smartphone in evidence bag # A5659527 belonging to Eliseo MENDIOLA-RUIZ, and an Apple smartphone in evidence bag # A5659526 belonging to MENDIOLA-RUIZ. The smartphones, notebook, and

dash camera are currently located at the United States Customs and Border Protection Port of Entry on Daniel Webster Highway in Pittsburg, New Hampshire in a secure location.

6.  As to the smartphones and dash camera, the applied-for warrant would authorize forensic examination for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

7.  On September 2, 2023, Beecher Falls agents were alerted to multiple individuals illegally crossing the international border near Canaan, Vermont at 7:52PM. The subjects were observed walking south from the border wearing backpacks. Agents responded to the area within minutes but were unable to locate any subjects. From that time until approximately 3:30AM the following day, September 3, 2023, agents maintained a presence in the area.

8.  At 5:31AM on September 3, 2023, a vehicle was observed at a location that is commonly associated with the transportation of aliens, and not an otherwise commonly traveled vehicle route. A Beecher Falls agent began to drive west on Vermont Route 114 in the direction of that location. While driving, the agent saw two vehicles in tandem coming east toward his location in a timeframe that would be consistent with a vehicle leaving the common pickup area. The agent noticed the lead vehicle had out-of-state license plates, a common feature of vehicles used to transport aliens in furtherance of their unlawful entry into the United States. The agent was also able to see multiple occupants inside the vehicle.

9.  The agent turned his vehicle around and began to follow the two vehicles east on Vermont Route 114. The second vehicle turned south on Vermont Route 102, while the lead vehicle continued east towards New Hampshire Route 3. The agent called other agents in the area to let them know of the vehicle traveling south on Vermont Route 102 and informed them

that the agent would continue east on Vermont Route 114 after the lead vehicle. The lead vehicle, a Honda CR-V, entered New Hampshire and turned south on New Hampshire Route 3 from Vermont Route 114. The agent was able to close the gap between the vehicles in order to read the numbers and letters on the license plate but was unable to determine the state.

10. The agent activated his emergency equipment, and the Honda CR-V pulled to the side of the road just before County Farm Road intersects with New Hampshire Route 3. As the agent approached the vehicle, he was able to see the license plate more clearly and relayed to radio that it was a Minnesota plate. The agent approached the driver's side of the vehicle and asked the driver for his identification. The driver, Reynaldo VELASCO-VELASCO, handed the agent a Washington State driver's license. While the agent spoke with VELASCO-VELASCO, the agent observed that the passengers in the vehicle had backpacks with them and their pants from their shins down appeared to be wet and dirty. At this point, the agent requested backup to the location. While the agent was waiting for the immigration and wants and warrants checks on VELASCO-VELASCO to return, he asked the passengers of the vehicle if they had any identification and they all declined. When other agents arrived on scene, they asked VELASCO-VELASCO and the other four occupants of the vehicle if they had any documentation to be in the United States legally. All four subjects, later identified as Nayeli COLLINOT-GUTIERREZ, MENDIOLA-RUIZ, POSADAS-GARCIA, and SANCHEZ-GALLEGOS, and the driver, VELASCO-VELASCO, admitted to being in the country illegally.

11. Based on my training and experience, I know that alien smugglers and aliens being smuggled often use smartphones to arrange and facilitate illegal entry into the United States and transportation within the United States. I believe that evidence of the alien smuggling scheme will be found on the devices, to include call records, text messages, photographs, internet

logs, and other electronic records. I further believe that the dash camera found in VELASCO-VELASCO's vehicle may contain recorded images of locations and activities that constitute evidence of the alien smuggling scheme.

12. The smartphones, dash camera, and notebook are currently in the lawful possession of the United States Border Patrol. They came into the United States Border Patrol's possession as evidence when they were seized after VELASCO-VELASCO was arrested for alien smuggling and being illegally present in the United States, and SANCHEZ-GALLEGOS, POSADAS-GARCIA, and MENDIOLA-RUIZ were arrested for being illegally present in the United States. While the United States Border Patrol may already have all necessary authority to search these items, I seek this warrant out of an abundance of caution to be certain any search will comply with the Fourth Amendment and other applicable laws.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

13. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

14. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the devices because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

15. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices

consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

16. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

17. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the items described in Attachment A to seek the items described in Attachment B.

/s/ Salvatore Levatino
Salvatore D. Levatino
Border Patrol Agent - Intelligence
United States Border Patrol

The affiant appeared before me by telephonic conference, on this date, pursuant to Fed. R. Crim. P. 4.1, and affirmed under oath the content of this affidavit and application.

HON. TALESHA SAINT-MARC
UNITED STATES MAGISTRATE JUDGE
**Oct 6, 2023**

## ATTACHMENT A

The property to be searched is a Samsung smartphone in evidence bag # A5659627 belonging to Reynaldo VELASCO-VELASCO and found on his person, a Kenwood dash camera in evidence bag # A5659591 found in VELASCO-VELASCO's vehicle, a paper notebook in evidence bag # A5659592 found in VELASCO-VELASCO's vehicle, an unclaimed Samsung smartphone in evidence bag # A5659523, an Oppo smartphone in evidence bag # A5659529 belonging to Daniel SANCHEZ-GALLEGOS, a Samsung smartphone in evidence bag # A5659528 belonging to Jose Alberto POSADAS-GARCIA, a Samsung smartphone in evidence bag # A5659527 belonging to Eliseo MENDIOLA-RUIZ, and an Apple smartphone in evidence bag # A5659526 belonging to MENDIOLA-RUIZ. The smartphones, notebook, and dash camera are currently located at the United States Customs and Border Protection Port of Entry on Daniel Webster Highway in Pittsburg, New Hampshire in a secure location.

## ATTACHMENT B

All data on the electronic devices or information contained in the paper notebook described in Attachment A that constitutes evidence of violations of 8 U.S.C. §§ 1324 & 1326 including:

   a. Photographs and other images of alien smuggling, currency, receipts, purchases, vehicles, and/or locations;

   b. Communications related to the harboring, transportation, movement, or pathways of aliens being smuggled—including e-mails, text messages, instant messages, chat logs, attachments to messages, and drafts;

   c. Ledgers, notes, or other records of types, amounts, and prices related to alien smuggling, as well as information about the dates and places of those transactions;

   d. Records of financial transactions, including wire transfers, bank deposits and withdrawals, credit or debit card activities, and electronic currency activities;

   e. Lists of coordinators, facilitators, smugglers, drivers, including identifying and contact information;

   f. Contact lists showing names, street names, nicknames, phone numbers, email addresses, screen names of associated individuals;

   g. Geographic locations of the devices at times relevant to the investigation;

   h. Records of travel, including ticketing information, rental agreements, and hotel reservations and payments;

   i. Evidence indicating how and when the devices and associated cellular service were used to determine the chronological context of cellular device use, account access, and events relating to the crimes under investigation;

j. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, usernames and passwords, documents, and browsing history;

k. Records evidencing the use of the devices to access the internet, including:

    a. Internet Protocol addresses used;

    b. Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.